# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**E.D.H., by and through Meghan Hernandez,**

**Plaintiff,**

v.

**ALEX LEINTZ, et al.,**

**Defendants.**

**Case No. 25-2277-DDC-JBW**

## MEMORANDUM AND ORDER

Raquel Lynn Saldivar failed to register her dogs, as municipal law required. After failing to appear for a related court proceeding, the local government jailed her. She died in jail.

Plaintiff E.D.H., a minor and Saldivar's heir, brings this wrongful-death action by and through her next friend, Meghan Hernandez. She sues a series of defendants—Andrew Dedeke, the Leavenworth County Sheriff; Alex Leintz; Jay Douthitt; Greg Schneider; and Melissa Wardrop.[1] Plaintiff asserts that these defendants negligently caused the decedent's death while she was incarcerated at the Leavenworth County Jail.

Before the court is defendants' Motion to Dismiss (Doc. 26). Defendants argue that plaintiff failed to comply with Kansas's notice-of-claims statute, Kan. Stat. Ann. § 12-105b. And so, they say, plaintiff's wrongful-death action isn't viable. The court disagrees with

---

[1]    Plaintiff sued another defendant not listed here—HouseCalls of Kansas, LLC d/b/a Synergy Complete Healthcare. Doc. 24 at 1 (2nd Am. Compl.). HouseCalls separately moved to dismiss the complaint. Doc. 29. After HouseCalls filed that motion, the parties informally informed the court that plaintiff had settled her claims against HouseCalls. And plaintiff since has filed a Motion for Approval of Minor Settlement Agreement (Doc. 59) to settle her claims with HouseCalls. The court's reference to "defendants" in this order thus excludes HouseCalls.

defendants' position and denies their motion. The notice filed, while imperfect, substantially complied with Kansas law. The court explains this result, below, starting with a brief overview of the facts alleged in the Second Amended Complaint.

## I.       Background

Defendants' Motion to Dismiss turns on the details of a document extraneous to the Second Amended Complaint, so the court offers just a brief summary of the operative pleading here.

The decedent was arrested on a misdemeanor warrant for failing to appear. Doc. 24 at 4 (2nd Am. Compl. ¶ 22). Subsequently incarcerated at the Leavenworth County Jail, the decedent become too sick to eat, drink, or urinate. *Id.* at 5 (2nd Am. Compl. ¶ 25). She continuously vomited and suffered severe abdominal pain. *Id.* Despite her clear distress, defendants failed to aid her. *Id.* (2nd Am. Compl. ¶ 26). The decedent informed Wardrop, the nurse stationed at Leavenworth County Jail, that she was experiencing opioid withdrawal. *Id.* (2nd Am. Compl. ¶ 28). Wardrop sent the decedent back to her cell, failing to summon medical support. *Id.* at 6 (2nd Am. Compl. ¶¶ 31–32). The decedent experienced "excruciating" symptoms of opioid withdrawal for the next 13 hours. *Id.* (2nd. Am. Compl. ¶ 33). Douthitt, Schneider, and Leintz, officers on duty, took the decedent to the medical unit for another evaluation. *Id.* at 6–7 (2nd. Am. Compl. ¶¶ 35–40). They then called Wardrop, who said she would check on the decedent the next morning. *Id.* at 7 (2nd Am. Compl. ¶¶ 43–45). The decedent died several hours later, after the officers had returned her to a cell. *Id.* at 8, 9 (2nd Am. Compl. ¶¶ 47–60).

Plaintiff asserts two wrongful-death claims. One against Dedeke, in his official capacity as the Leavenworth County Sheriff, *id.* at 16–18 (2nd Am. Compl. ¶¶ 107–15), and one against the individual defendants, *id.* at 18–20 (2nd. Am. Compl. ¶¶ 116–28).

## II.    Legal Standard[2]

Under Rule 12(b)(6), a party may move to dismiss an action for failing "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009)

---

[2]    It's not altogether clear whether defendants bring their motion under Fed. R. Civ. P. 12(b)(6), the rule that provides for dismissal for failure to state a claim, or Fed. R. Civ. P. 12(b)(1), the rule that provides for dismissal for lack of subject-matter jurisdiction.  Defendants' motion asks the court to dismiss "for lack of subject matter jurisdiction[.]"  Doc. 26 at 1.  But it cites Rule 12(b)(6).  *Id.* Meanwhile, defendants' brief cites Rule 12(b)(1).  Doc. 27 at 1.  The court construes defendants' motion as one brought under Rule 12(b)(6).  Here's why:

Plaintiff's Second Amended Complaint invokes the court's diversity jurisdiction.  Doc. 24 (2nd Am. Compl. ¶ 15).  And defendants never contest that the court has diversity jurisdiction.  Yet defendants claim that plaintiff's failure to follow Kansas's notice-of-claims statute deprives this federal court of jurisdiction.  Can Kansas law deprive a federal court of jurisdiction?  No, it can't.

"'Only Congress may determine a lower federal court's subject-matter jurisdiction.'"  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 666 (10th Cir. 2020) (emphasis omitted) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004)).  "And when Congress grants subject matter jurisdiction, no other entity—not the litigants and *not the states*—can divest a federal court of the same."  *Id.* (emphasis added); *see also id.* at 666 n.5 (collecting cases); *Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 497 (4th Cir. 2024) ("But even though states can define the substantive rights that are enforced in diversity jurisdiction, they cannot limit the subject matter jurisdiction of federal courts, even in diversity cases.").

So, the court properly may exercise subject-matter jurisdiction, a conclusion the court reaches without referring to Kansas law.  Defendants' argument—that plaintiff failed to comply with Kansas's notice-of-claims statute—attacks whether plaintiff has "stated a valid claim for relief" under Kansas law, and the answer to that inquiry "should . . . be[] determined pursuant to a Rule 12(b)(6) motion[.]" *Wideman*, 100 F.4th at 498 n.9.

("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it's "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.       Analysis[3]

This Order proceeds like this:  The court begins with some additional legal background about Kansas's notice-of-claims statute and its wrongful-death law.  It then describes the pertinent notice at issue here.  Finally, the court applies the governing law to the notice, explaining why it satisfies that governing legal standard.

### A.      Additional Legal Background

#### 1.      Kansas's Notice-of-Claims Statute

Kansas law requires plaintiffs asserting a tort "claim against a municipality or against an employee of a municipality" to first "file a written notice" with the clerk of the municipality. Kan. Stat. Ann. § 12-105b(d); *Sleeth v. Sedan City Hosp.*, 317 P.3d 782, 789 (Kan. 2014).  "The statute lists five categories of information that must be included in the written notice filed with

---

[3]      The parties impliedly agree that Kansas law governs this case.  The court concurs.  A federal court "applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim."  *Nordwald v. Brightlink Commc'ns, LLC*, 603 F. Supp. 3d 1030, 1040 (D. Kan. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  For tort claims, Kansas "courts apply the substantive law of the state where . . . the injury was sustained."  *Dragon v. Vanguard Indus., Inc.*, 89 P.3d 908, 914 (Kan. 2004).  The injury alleged here occurred in Kansas, so Kansas law governs.

the . . . clerk." *Dodge City Implement, Inc. v. Bd. of Cnty. Comm'rs*, 205 P.3d 1265, 1281 (Kan. 2009).

> They are: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.

*Id.*; Kan. Stat. Ann. § 12-105b(d)(1). Kansas doesn't require a plaintiff's notice to comply strictly with these requirements. Rather, a "notice is effective if it substantially complies with the statutory requirements." *Cont'l W. Ins. Co. v. Shultz*, 304 P.3d 1239, 1244 (Kan. 2013); Kan. Stat. Ann. § 105b(d)(1).

"'Substantial compliance' means 'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.'" *Dodge City Implement*, 205 P.3d at 1281 (quoting *Orr v. Heiman*, 12 P.3d 387, 389 (Kan. 2000)). The "question of compliance is not based upon a 'mechanical counting' of information addressing each enumerated category in the statute." *Sleeth*, 317 P.3d at 791. "Instead, notice is sufficient if it gives the municipality what it needs for a 'full investigation and understanding of the merits of the claims advanced.'" *Id.* (quoting *Cont'l W.*, 304 P.3d at 1244). A notice meets this standard if it "advises the municipality of the time and place of the injury, affords the municipality an opportunity to ascertain the character and extent of the injury sustained, and allows for the early investigation and resolution of claim disputes." *Id.*

### 2. Kansas's Wrongful-Death Law

Recall that plaintiff asserts wrongful-death claims here. The court's work to decide defendants' motion turns, in part, on the unique nature of wrongful-death claims in Kansas. So, the court briefly explains the contours of this law.

5

A wrongful-death "action may be brought only by an heir of the decedent 'who has sustained loss by reason of the death.'" *Davidson v. Denning*, 914 P.2d 936, 942 (Kan. 1996) (quoting Kan. Stat. Ann. § 60-1902).  Kansas law specifies that such an "action shall be for the exclusive benefit of *all* of the heirs who has sustained a loss regardless of whether they all join or intervene[.]" Kan. Stat. Ann. § 60-1902 (emphasis added).  The Kansas Supreme Court has held that Kansas law "create[s] but one statutory cause of action, and a negligent wrongdoer can be compelled to answer but once for a single wrongful death irrespective by whom the action is brought." *Johnson v. McArthur*, 596 P.2d 148, 152 (Kan. 1979) (quotation cleaned up).  Also relevant here, Kansas law requires court approval "to bind a minor to an agreement settling a wrongful death claim." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 205 (Kan. Ct. App. 1999).

### B.    Additional Factual Background

Because defendants' motion challenges just the sufficiency of the notice of claim, the court focuses its attention on this piece of the puzzle.  The parties agree that a single notice was filed with the Leavenworth County Clerk.  *See* Doc. 27-1.[4]  An attorney—though not the ones representing plaintiff here—filed a notice with the Leavenworth County Clerk.  *Id.*  The filing expressed that the attorney represented two of the decedent's children, Ezra and Eissac.  *Id.* at 1. It also noted that the attorney didn't represent a third child of the decedent—plaintiff in this action.  *Id.*  Because this paragraph of the notice represents the heart of the parties' dispute, the court reproduces it in its entirety here:

---

[4]    The court can consider this notice without converting the motion to dismiss into one for summary judgment because the operative pleading references this notice and neither party disputes the notice's authenticity.  Doc. 24 at 4 (Second Am. Compl. ¶ 21); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (allowing courts to consider, at motion to dismiss stage, "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" (quotation cleaned up)).

1. Our firm represents Ezra and Eissac Saldivar, the children of Raquel Saldivar. Ezra Saldivar and Eissac Saldivar currently reside with their Grandmother and guardian, Jamie Saldivar, at 304 N. 17th St. Leavenworth, KS 66048. Our firm's address is: 2345 Grand Boulevard, Suite 1950 Kansas City, MO 64108. There is one other child of Ms. Saldivar's marriage, a third child of Raquel; we do not currently represent the third child, but we understand the third child may be considered an heir of Ms. Saldivar for purposes of seeking a claim and/or recovering under the Kansas wrongful death statute. There is also an Estate of Raquel Saldivar being opened; information on it is not yet available, but it will be making a tort claim pursuant to any and all survivorship rights over claims personal to Ms. Saldivar.

*Id.* The notice goes on to describe the circumstances leading to the decedent's death in the Leavenworth County Jail. *Id.* It asserts that the decedent "endured intense pain and suffering" and that the clients intend to assert a claim for wrongful death. *Id.* at 2. Finally, the notice notes, "our clients *and the claimants* perceive that the total amount of damages sought in these claims . . . is $20 million." *Id.* (emphasis added).

### C. Analysis

The court's task requires it to determine whether the notice here substantially complies with Kan. Stat. Ann. § 12-105b(d). Although it's something of a close call, the court concludes that the notice here satisfies the statutory requirements. It thus denies defendants' Motion to Dismiss (Doc. 26).

Start where the parties agree: The notice here plainly contains four of the five elements that Kansas law requires. That is, the notice contains (1) a statement of plaintiff's claim; (2) the officials involved, if known;[5] (3) a statement of the nature and extent of the injury; and (4) a

---

[5]    The notice explains that the "names of the individual employees, staff, and/or agents of the Leavenworth County Jail involved in the death of Ms. Saldivar are currently unknown to us[.]" Doc. 27-1 at 2. Given defendants' then-unknown status, the notice apparently complies with the Kansas statute's directive to include "the name and address of any public officer or employee involved, *if known*[.]" Kan. Stat. Ann. § 12-105b(d)(1) (emphasis added). Defendants don't argue otherwise.

statement of the damages.  *See* Doc. 27-1; *Sleeth*, 317 P.3d at 790–91 (listing the categories of information that Kan. Stat. Ann. § 12-105b(d) requires).  This leaves the final element of the required notice:  the "name and address of the claimant and the name and address of the claimant's attorney."  Kan. Stat. Ann. § 12-105b(d)(1).  The notice here doesn't list plaintiff by name.  Nor does it list her attorney's name.  But it does mention that plaintiff is an heir of the decedent.  Doc. 27-1 at 1 (explaining that the decedent has a third child who is "an heir of Ms. Saldivar for purposes of seeking a claim and/or recovering under the Kansas wrongful death statute.").  And it suggests that plaintiff is a claimant.  *See id.* at 2 ("In reflection of the seriousness of the circumstances, our clients *and the claimants* perceive the total amount of damages sought in these claims . . . is $20 million." (emphasis added)).

The dispositive issue is whether the notice—notwithstanding its failure to use overtly plaintiff's name or her attorney's name—satisfies the substantial-compliance standard.  That is, whether the notice "advises the municipality of the time and place of the injury, affords the municipality an opportunity to ascertain the character and extent of the injury sustained, and allows for the early investigation and resolution of claim disputes."  *Sleeth*, 317 P.3d at 791.  It does.  The notice plainly describes the decedent's death and the circumstances that led to it.  Doc. 27-1 at 1.  It also apprised the municipality that the claimants intended to seek a wrongful-death claim against the municipality and its employees.  *Id.* at 1–2.  So, the notice "advise[d] the municipality of the time and place of the injury[.]"  *Sleeth*, 317 P.3d at 791.

Likewise, the notice, in describing the decedent's death, "afforde[d] the municipality an opportunity to ascertain the character and extent of the injury sustained[.]"  *Id.*  Defendants take issue with this point, asserting that—without plaintiff's name—they couldn't investigate the extent of plaintiff's specific damages.  Doc. 27 at 3.  The court disagrees.  The notice explained

8

that the decedent had three children, named two of those children, and provided the name and address of the two children's grandmother and guardian.  This information gave the municipality what it needed to conduct a full investigation.  The notice also adequately described the circumstances of the decedent's death.  Doc. 27-1 at 1.  The injuries claimed in this wrongful-death suit directly resulted from that death.  The notice thus offered information sufficient for the municipality to investigate the wrongful-death claim and the "character and extent" of the injury resulting from the death.  *Sleeth*, 317 P.3d at 791.  The notice's references to the decedent, a wrongful-death claim, and the class of heirs sufficed to allow the municipality to investigate the very claim plaintiff now asserts.

Defendants' position, evidently, is that omitting plaintiff's name from the notice hindered their ability to identify the "mental anguish, loss of companionship, los[s] of parental care, training, and guidance, and reasonable funeral expenses" plaintiff suffered.  Doc. 27 at 3.  The court isn't persuaded.  A simple investigation based on the notice here could have unearthed plaintiff's identity.  The notice also listed contact information for the other two heirs' attorneys and their grandmother, who presumably could have provided this information if requested.  The notice didn't need to answer every single question defendants have; it just needed to put them in a position where they could *find* the answers to their questions.  And the notice achieved that purpose.

Defendants' concession that the notice is adequate for the decedent's other heirs is fatal to their position.  *See* Doc. 38 at 2 (conceding that if "either of the other heirs . . . had filed a wrongful death claim . . ., their notice of claim would satisfy K.S.A. 12-105b(d)").  The wrongful-death claim in the notice inherently subsumed plaintiff's claim—indeed it *was* plaintiff's claim.  Recall once more that a wrongful-death claim in Kansas is "for the exclusive

benefit of *all* of the heirs" of the decedent. Kan. Stat. Ann. § 60-1902 (emphasis added). And the class of heirs can bring just one wrongful-death action. *Johnson*, 596 P.2d at 152. If Ezra and Eissac—the heirs identified in the notice—had taken their claims to trial, they could have proven and sought plaintiff's damages too. *See Frost v. Hardin*, 571 P.2d 11, 12 (Kan. Ct. App. 1977) ("Although any heir at law may join in a wrongful death action, none is an indispensable party. Damages to all must be proven in a single action, whether joined as parties plaintiff or not."), *aff'd and adopted*, 577 P.2d 1172 (Kan. 1978). Indeed, the notice claims $20 million on behalf of *all* claimants. *See* Doc. 27-1 at 2. Defendants can't explain—nor have they tried— why it makes any real-world difference who is formally listed as the plaintiff to the claim.

Finally, the notice here allowed "for the early investigation and resolution of claim disputes." *Sleeth*, 317 P.3d at 791. Defendants could have negotiated and settled with Ezra and Eissac and their attorneys. If they had done so, a court would have to approve this settlement and apportion it between *all three* heirs. *See Baugh*, 973 P.2d at 205 (settlement involving minor requires court approvement); *White v. Koerner*, 533 P.3d 314, 316, 318 (Kan. Ct. App. 2023) (explaining that Kansas law requires a court to apportion a wrongful-death settlement and reviewing an apportionment of a settlement made without the consent of one heir). But the point remains that defendants could have settled this case based on the notice filed. Thus, the notice filed here satisfied all three statutory objectives. It "[1] advise[d] the municipality of the time and place of the injury, [2] afford[ed] the municipality an opportunity to ascertain the character and extent of the injury sustained, and [3] allow[ed] for the early investigation and resolution of claim disputes." *Sleeth*, 317 P.3d at 791.

The upshot is that the wrongful-death claim noticed in the filing was exactly the same wrongful-death one plaintiff asserts here. It was her claim then, and it's her claim now.[6] The notice adequately alerted the municipality that the decedent's heirs intended to assert a wrongful-death claim based on the decedent's death in the Leavenworth County Jail. The notice thus substantially complied with Kan. Stat. Ann. § 12-105b(d).

Some examples from the case law shore up this conclusion. Take, for instance, *Southwestern Bell Telephone Co. v. Board of Commissioners*, 202 P.3d 54 (Kan. Ct. App. 2009). There, plaintiff filed a notice of claim listing the wrong claimant. The notice incorrectly listed the plaintiff's trade name instead of its legal name—AT&T instead of Southwestern Bell. *Id.* at 57. The Kansas Court of Appeals found substantial compliance, explaining that the "record fail[ed] to suggest that the County was unable to understand this claim or to investigate its basis." *Id.* The same goes here. Although the notice here didn't identify plaintiff by name, nothing suggests that defendants "were unable to understand" the wrongful-death claim "or investigate its basis." *Id.*

Next, consider *Arnold v. City of Olathe*, 413 F. Supp. 3d 1087, 1113 (D. Kan. 2019), *superseded by statute on other grounds*, Kan. Stat. Ann. § 12-105b(d). There, the notice listed the decedent and the decedent's heirs but not the plaintiff—the administrator of the decedent's estate. *Id.* Again, our court found that this notice substantially complied with Kan. Stat. Ann. § 12-105b(d), suggesting that the omission was "inconsequential." *Id.*

---

[6]  Likewise, the decedent's other two heirs share in the claim that plaintiff asserts here even though they haven't joined or intervened. *See* Kan. Stat. Ann. § 60-1902 ("The action shall be for the exclusive benefit of all of the heirs who has sustained a loss regardless or whether they all join or intervene therein, but the amounts of their respective recoveries shall be in accordance with the subsequent provisions of this article.").

Defendants insist that case law supports their position. Citing *Dodge City Implement*, defendants argue that failing to include the claimant's name "renders a notice of claim substantially non-compliant[.]" Doc. 27 at 3. The court doesn't read *Dodge City Implement* nearly so broadly.

There, plaintiffs—a company and the company's truck driver—were involved in a train-on-truck collision. *Dodge City Implement*, 205 P.3d at 1268. Plaintiffs paid the train company $3 million to settle its claims. *Id.* Plaintiffs' insurer then filed a notice of claim under Kan. Stat. Ann. § 12-105b(d) with the Barber County Clerk. *Id.* The notice explained the circumstances of the collision and suggested that the county was at fault for "failure to appropriately maintain railroad crossing signage[.]" *Id.* at 1281 (quotation cleaned up). And the notice expressed the insurer's belief that it was "entitled to comparative implied indemnity from Barber County for" the $3 million settlement it had paid the train company. *Id.* (quotation cleaned up). Plaintiffs sought to piggyback off this notice to prosecute their own negligence claims against the county. *Id.* at 1280–81. The Kansas Supreme Court rejected this effort, explaining that the notice didn't identify the plaintiffs, their addresses, or their attorneys. *Id.* at 1283. Nor did the notices correctly identify the extent of damages that plaintiffs sought. *Id. Dodge City Implement* thus "regard[ed] these failures as more than merely technical; they posed serious obstacles to the [municipalities'] full investigation and understanding of the merits of the claims advanced." *Id.*

*Dodge City Implement* differs from this case in obvious, meaningful ways. Most importantly, the notice at issue here alerted defendants to the claim the plaintiff asserts here. Once more, the claim noticed in the pre-suit filing here is the same one that plaintiff now asserts. So unlike in *Dodge City Implement*—where the notice neither mentioned the claims the plaintiffs sought to prosecute nor the damages they sought for those claims—the notice here adequately

advised the municipality of the very wrongful-death claim plaintiff now seeks to pursue.  The bottom line is that the notice here, while arguably deficient in some respects, gave "the municipality what it needs for a full investigation and understanding of the merits of the claims advanced." *Sleeth*, 317 P.3d at 791 (quotation cleaned up).  The filing thus substantially complied with Kansas law.  So, the court denies defendants' Motion to Dismiss (Doc. 26).

## IV.        Conclusion

Because the pre-suit notice substantially complies with Kan. Stat. Ann. § 12-105b(d), the court denies defendants' Motion to Dismiss (Doc. 26).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 26) is denied.

**IT IS SO ORDERED.**

**Dated this 13th day of July, 2026, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

13