**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**E.D.H., by and through MEGHAN HERNANDEZ,**

**Plaintiff,**

**v.**

**HOUSECALLS OF KANSAS, LLC, et al.,**

**Defendants.**

**Case No. 25-2277-DDC-JBW**

**MEMORANDUM AND ORDER**

This matter comes before the court on plaintiff's Motion and Supplemental Motion for Approval of Minor Settlement Agreement. Doc. 59; Doc. 77. Plaintiff E.D.H., by and through her next friend and adoptive mother Meghan Hernandez, brings this wrongful-death action following the death of Raquel Lynn Saldivar in Leavenworth County Jail. Doc. 24 at 16. E.D.H. is a minor and one of Saldivar's three heirs-at-law. Doc. 77 at 1. Hernandez, on E.D.H.'s behalf, sued a series of defendants and has reached a settlement agreement with one—HouseCalls of Kansas, LLC. *Id.* The proposed settlement agreement with HouseCalls also seeks to settle claims against HouseCalls in a separate lawsuit brought by Saldivar's estate. *Id.* at 3; *see Spradlin v. HouseCalls of Kansas, LLC*, No. 25-2273-DDC-JBW (D. Kan. filed May 19, 2025).

The court held two hearings, a second one convened after the parties submitted an updated version of the settlement agreement. The court took the motion to approve under

advisement at the end of the second hearing. Doc. 78. The court now grants the motion and approves the parties' settlement, for reasons explained below.

## I. Findings of Fact

The court, after reviewing the parties' submissions and hearing the testimony presented at the hearing, finds as follows:

1. In May 2023, Raquel Lynn Saldivar died while in custody of the Leavenworth County Jail. Doc. 24 at 1; Proposed Settlement Agreement at 1 (submitted in camera)[1] [hereinafter Settlement].
2. At the time of Raquel Saldivar's death, defendant HouseCalls provided certain contractual medical services to Leavenworth County Jail. Settlement at 1.
3. Hernandez, on behalf of E.D.H., initiated a lawsuit against HouseCalls for its part in Raquel Saldivar's death, also naming several other defendants not party to this Settlement. *Id.*
4. The Estate of Raquel Lynn Saldivar initiated its own lawsuit in our court, brought by Tracy Spradlin, Special Administrator of the Estate, to recover for Raquel Saldivar's pain, suffering, and death, naming HouseCalls and several other defendants. *Id.*

[1] Because the Proposed Settlement Agreement and the affidavits supporting the proposed settlement are the focus of the court's analysis, the court orders the parties to redact and properly file them on the public docket in the case.

5. Raquel Saldivar's sole heirs-at-law are her three minor children E.D.H., E.S.1, and E.S.2.[2] Hernandez Aff. ¶ 5 (submitted in camera); Saldivar Aff. ¶ 5 (submitted in camera).

6. Meghan Hernandez is the legal guardian and adoptive parent of E.D.H. Hernandez Aff. ¶ 3.

7. Jamie Saldivar is the legal guardian and adoptive parent of E.S.1 and E.S.2. Saldivar Aff. ¶ 3.

8. Plaintiff E.D.H. is nine years old. Doc. 77 at 1. All three of Raquel Saldivar's heirs are minors, born within a few years of age to one another.

9. HouseCalls denies any liability for Raquel Saldivar's death. Settlement at 3. But HouseCalls and Hernandez represent to the court that they wish to settle and compromise plaintiffs' claims against HouseCalls fully and finally in both the Wrongful Death Act action brought by Hernandez (this case, No. 25-2277) and the case brought by the Estate (No. 25-2273). *Id.* at 1.

10. Hernandez and HouseCalls both understand the agreement doesn't in any way affect Hernandez's or the Estate's claims against the non-settling parties. *Id.* That litigation remains ongoing.

11. Both Hernandez and the Estate have agreed to settle any and all claims against HouseCalls arising out of Raquel Saldivar's death for a total payment of $45,000. *Id*. at 2. The structure of the agreement is as follows:

[2] The court uses the initials of the minor children to protect their privacy. *See* Fed. R. Civ. P. 5.2(a)(3) (requiring use of a minor's initials). Because two of the children share the same initials, the court adds numbers to their initials to differentiate between them.

a. In consideration for release of any and all claims by the Estate, HouseCalls will pay $30,000 to the Estate within 14 days of the effective date of the agreement (the date when this Order is entered). *Id.* The payment won't actually go the Estate, however. Instead, HouseCalls will send the payment by wire transfer to the Estate's counsel, who will deposit the money into a trust account, and counsel then will deposit the funds into a restricted savings account or investment account in compliance with Kan. Stat. Ann. § 38-152(d). *Id.* E.S.1 and E.S.2 will receive a one-half share each. *Id.*

b. E.D.H., by and through Hernandez, will waive her right to recover any payments from HouseCalls connected to the Estate's lawsuit. *Id.*

c. In consideration for release of any and all claims by Raquel Saldivar's heirs as part of the wrongful-death lawsuit, HouseCalls will pay $15,000 by check to Hernandez's counsel no later than August 31, 2026.[3] *Id.* Counsel will deposit the money into a trust account, and counsel then will deposit the funds into a restricted savings account or investment account in compliance with Kan. Stat. Ann. § 38-152(d). *Id.* at 2–3. Hernandez will receive the payment on behalf of E.D.H. consistent with § 38-152(d). *Id.* at 3.

[3] The court realizes that August 31, 2026 passed some time ago. So, the court interprets this date as a scrivener's error and, consistent with the agreement's other provisions, requires payment within 14 days of this Order. This replicates the procedure and timeline specified for the payments for E.S.1 and E.S.2.

d. E.S.1 and E.S.2, by and through their legal guardian Jamie Saldivar, will waive their rights to recover any payments from HouseCalls connected to the wrongful-death lawsuit brought by Hernandez. *Id.* at 2.

e. Hernandez agrees to a settlement amount of $15,000 for E.D.H., and of a total of $45,000 on behalf of all three heirs, because she believes it's in E.D.H.'s best interest. Hernandez Aff. ¶ 9. Jamie Saldivar agrees that the settlement amount—a total of $30,000 for E.S.1 and E.S.2 and $15,000 for E.D.H.—is in E.S.1 and E.S.2's best interest as well. Saldivar Aff. ¶ 9. Hernandez and Jamie Saldivar make these decisions based upon reasonable inquiry, and in part upon the professional judgment of counsel, who concluded that there is no practical way to recover additional or greater sums from HouseCalls. Hernandez Aff. ¶ 10; Saldivar Aff. ¶ 10.

12. The following chart captures the parties' proposed settlement structure:

| **Date of Fund Distribution** | **Payable to:** | **Procedure for Distribution** | **Amount:** |
|---|---|---|---|
| Within 14 days of this Order | Estate's counsel, Forsgren Fisher McCalmont DeMarea Tysver LLP (in No. 25-2273) | 1) Counsel deposits funds into client trust account<br>2) Counsel deposits funds into restricted account consistent with § 38-152(d), less liens, costs and fees<br>3) Funds go to E.S.1 and E.S.2. in one-half shares | $30,000 |
| Within 14 days of this Order | Hernandez's counsel, Wagstaff & Cartmell LLP (in No. 25-2277) | 1) Counsel deposits funds into client trust account<br>2) Counsel deposits funds into restricted account consistent with § 38-152(d), less liens, costs and fees<br>3) Funds go to Hernandez, for the benefit of E.D.H. | $15,000 |

13. At the settlement-review hearings, the court learned that the fairness of the settlement amount was determined based on a variety of considerations, including the approximate value of the legal claims brought by Hernandez and the Estate (if they had proceeded to trial), and the relative responsibility and involvement of HouseCalls in the events surrounding Raquel Saldivar's death.
14. Hernandez understands that counsel for E.D.H. is waiving any claim for expenses and fees out of the settlement payment. Hernandez Aff. ¶ 12.
15. The Estate didn't participate in the settlement-review hearings held by the court as part of this global settlement.

After considering the parties' submissions, the testimony given at the settlement hearings, and counsel's comments, the court finds the wrongful-death settlement is proper and in the best interest of Saldivar's heirs. The court explains these conclusions below, starting with the legal standard applicable in wrongful-death settlements.

## II. Legal Standard

Hernandez asserted this action under the Kansas Wrongful Death Act. Doc. 24 at 16. Under that Act, the court must apportion the recovery, after a hearing, to the decedent's heirs "in proportion to the loss sustained by each of the heirs." Kan. Stat. Ann. § 60-1905. The Act directs the court to apportion the recovery among all qualifying heirs "regardless of whether they joined or intervened in the action." *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each"). Also, the court should allow costs and reasonable attorneys' fees for plaintiffs' counsel. *Id.*

The Act allows recovery of damages for the following kinds of loss: "(1) [m]ental anguish, suffering or bereavement; (2) loss of society, companionship, comfort or protection; (3) loss of marital care, attention, advice or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance or education; and (6) reasonable funeral expenses for the deceased." Kan. Stat. Ann. § 60-1904. This statute thus allows the court to apportion both pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transp., Inc.*, 125 F. Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. § 60-1903 (describing damages the court or jury may award in a wrongful-death action).

Pecuniary damages in a wrongful-death action are those that "'can be estimated in and compensated by money.'" *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)). Pecuniary damages "'should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased.'" *Id.* (quoting *McCart*, 641 P.2d at 391). In Kansas, pecuniary "damages include losses of such things as marital or parental care, services, training, advice, and financial support." *Id.* Kansas law "recognizes no limit on pecuniary damages recoverable in certain personal injury and wrongful death actions." *Sleeth v. Sedan City Hosp.*, 317 P.3d 782, 791 (Kan. 2014).

This case comes with a second level of review. It stems from the case's claims made on behalf of minors, and the proposal to resolve them by agreement. The court bears an additional duty in cases involving settlements on behalf of minors. Kansas law treats minors "as persons under legal disability[.]" *In re Est. of Wise*, 890 P.2d 744, 749 (Kan. Ct. App. 1995). And so, a court must approve a settlement contract before it can bind a minor plaintiff. *Childs ex rel. Harvey v. Williams*, 757 P.2d 302, 303 (Kan. 1988). Kansas law requires courts "to exercise extensive oversight, ensuring that the injured minor's claims are not sold short by an agreed

settlement merely outlined at a 'friendly' hearing." *White ex rel. White v. Allied Mut. Ins. Co.*, 31 P.3d 328, 330 (Kan. Ct. App. 2001). Courts "'may not simply rely on the fact that the minor's parents have consented to the proposed agreement. Instead, the court must determine whether the agreement is in the minor's best interests.'" *Id.* (quoting *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 205 (Kan. Ct. App. 1999)). Indeed, Kansas cases have quoted favorably the Alabama Supreme Court's view that a court should approve an agreement, not because the parties agree, but "'because it appears from the evidence that the amount is just and fair'" and "'conservative of the minor's interests.'" *Mo. Pac. Ry. Co. v. Lasca*, 99 P. 616, 618 (Kan. 1909) (quoting *Tenn. Coal, Iron & R.R. Co. v. Hayes*, 12 So. 98, 103 (Ala. 1892)).

Consistent with these obligations and applying the Act, the court begins by evaluating how the parties' settlement agreement apportions the recovery, then whether the agreement is in the best interest of Saldivar's minor heirs. Finally, the court briefly touches on the question of attorneys' fees.

## III. Wrongful Death Act Settlement

### A. Apportionment of Recovery

This settlement raises a peculiar issue under the Act: It seeks to settle both a Kansas wrongful-death claim (this case) and claims made by the Estate under federal civil rights statutes (No. 25-2273). The settlement accomplishes this in a somewhat complicated fashion—it waives the rights of two of the heirs to recovery in the wrongful-death case in exchange for one of the heir's waiving her right to recovery in the Estate case. *See* Settlement at 2. While arguably problematic under the Wrongful Death Act, the court elects to apply a pragmatic view, and ultimately it concludes the settlement complies with both the spirit and letter of the wrongful-

death law. The court thus will approve the settlement because, taken altogether, it apportions recovery fairly among Raquel Saldivar's minor heirs.

The court must concern itself with the recovery of all the heirs in wrongful-death actions, which are brought "for the exclusive benefit of *all of the heirs* who [have] sustained a loss regardless of whether they all join or intervene[.]" Kan. Stat. Ann. § 60-1902. Here, E.S.1 and E.S.2 recover exclusively through the payments in the Estate lawsuit, and they waive their rights to recovery under this wrongful-death lawsuit. *See* Settlement at 2–3. E.S.1 and E.S.2 have an equal right to fair apportionment of recovery as E.D.H., meaning the recovery they receive as part of this settlement must comply with the Act. Kan. Stat. Ann. § 60-1905 (all heirs share in apportionment regardless of whether they're involved in the action).

Taken at face value, the settlement agreement denies recovery by E.S.1 and E.S.2 under the wrongful-death lawsuit entirely. But the parties' desire to settle both the Estate lawsuit and the wrongful-death lawsuit in the same agreement produces this result. The settlement allocates E.S.1 and E.S.2's share as part of the Estate lawsuit. Settlement at 2. So, at day's end, each heir recovers an equal and fairly apportioned share of the recovery, notwithstanding the agreement's convoluted structure. *Id*. (allocating an equal recovery of $15,000 for each heir). For this reason, the court concludes the settlement complies with the Act's mandate that each heir who has sustained a loss shall share in the apportionment of recovery. § 60-1905.

Now, the court assesses whether the settlement amount is just, fair, and in the minor heirs' best interests.

### B. Whether the Agreement is in the Minor Heirs' Best Interests

At the second settlement hearing, counsel for Hernandez represented that the settlement sum was agreed to in light of the relative value of the claim, and HouseCalls' relative responsibility and involvement in the events leading to Raquel Saldivar's death. Hernandez

relied on the professional judgment and experience that her attorneys possess from litigating similar cases. Testimony was elicited showing that Hernandez had consulted with her attorneys and was fully satisfied with their advice. Hernandez adequately was informed about the material facts surrounding the settlement and understood there weren't any practical means to secure an additional or greater amount from HouseCalls. Hernandez Aff. ¶ 10. She believes the settlement is in E.D.H.'s best interest. Hernandez Aff. ¶ 13. Likewise, Jamie Saldivar, as guardian of E.S.1 and E.S.2, was informed about the material facts of the settlement and believes the agreement is in E.S.1 and E.S.2's best interests. Saldivar Aff. ¶ 12.

The court concurs. And it finds the settlement amount—viewed in full—is just and fair. The sum of $45,000 fairly reflects the proportion of alleged involvement by HouseCalls in the events surrounding Raquel Saldivar's death; the time, effort, and expense necessary to litigate the case to trial; and the practical realities that led the parties to conclude they could not secure a greater sum from HouseCalls through settlement negotiations. The agreement settles the case with just one of several defendants, so the prospect of further recovery remains. Each of Raquel Saldivar's heirs are her minor children, and all are within a few years of age to one another. The court concludes that each heir has sustained a loss, and their share of the loss is roughly equal. The agreement—again, when viewed globally—is thus fairly apportioned because it distributes a sum of $15,000 for E.D.H. and $15,000 for E.S.1 and E.S.2 respectively (with each entitled to half of the Estate payment).

One lingering matter remains. That is, the court retained some concern about channeling recovery for two of the heirs through the Estate. At first, the court was concerned by this choice because it might expose the settlement funds to the Estate's creditors before passing to two of the heirs—potentially interfering with E.S.1 and E.S.2's portions of the settlement. Settlement at 2

(payment is subject to "liens, costs and fees"). The Act states emphatically that wrongful-death recovery must inure to the benefit of the *heirs*, not the decedent's estate. *Tank v. Chronister*, 160 F.3d 597, 599 (10th Cir. 1998). At the first settlement hearing, the parties didn't supply a persuasive rationale to explain why the money should go through the Estate. Doc. 62. But the parties subsequently rectified this issue, revising the settlement agreement ahead of the second settlement hearing. Doc. 78.

Under the final agreement terms, the $30,000 payment in settlement of the Estate's claims doesn't actually pass through the Estate—instead, the funds go directly from counsel's client trust account into a restricted account held for E.S.1 and E.S.2. Settlement at 2. What's more, the parties have agreed—and averred by sworn affidavit—that the restricted account for E.S.1 and E.S.2 will comply with Kan. Stat. § 38-152(c)–(d), which stoutly limits withdrawals to certain authorized circumstances. *See* Saldivar Aff. ¶ 11 (understanding that she is "obligated" to maintain a restricted account in the manner provided for in Kan. Stat. Ann. § 38-152(c)); § 38-152(c) (requiring timely deposits of settlement funds received on behalf of a minor into a restricted savings or investment account); § 38-152(d) (permitting withdrawals from a restricted account only by court order, the minor's turning age 18, or minor's death). This satisfies the court's concern that the money possibly might never reach E.S.1 and E.S.2—and it means the court can approve this settlement because it fairly and equally apportions the recovery among all Raquel Saldivar's heirs.

The court now turns to the final hurdle before it can approve the settlement: attorneys' fees.

### C. Attorneys' Fees

Usually, the court must evaluate a request for attorneys' fees as part of the settlement, because Kansas law "requires the district court to determine a reasonable fee for the plaintiffs'

attorneys in a wrongful death case." *Baugh*, 973 P.2d at 207 (citing § 60-1905). Here, the court doesn't need to evaluate the reasonableness of the fee since counsel for Hernandez reports that counsel isn't collecting any fees from the settlement with HouseCalls. *See* Hernandez Aff. ¶ 12.

There is also the question of attorneys' fees for counsel for the Estate. The Estate, represented by Administrator Tracy Spradlin, is a party to this global settlement with HouseCalls, but has chosen not to participate in the settlement hearings. Although it's a separate case, the funds distributed in compromise of the Estate's claims form the exclusive recovery of two of Saldivar's heirs. Without any information about the fees that Estate's counsel may wish to collect, the court can't assess the reasonableness of any such fees. All the court knows is E.D.H. will recover $15,000. That means each of E.S.1 and E.S.2 should recover $15,000 as well. So, the court only approves this settlement because it doesn't authorize recovery of attorneys' fees by counsel for the Estate.

## IV. Conclusion

The court grants plaintiff E.D.H.'s motion for approval of the updated settlement agreement submitted to the court. The court finds that the agreement fairly apportions recovery among Raquel Saldivar's heirs-at-law consistent with the Kansas Wrongful Death Act. The court orders that plaintiffs' counsel in both cases may not collect any attorneys' fees from the funds distributed under this agreement.

The court orders the parties to file the Settlement Agreement, the Hernandez Affidavit, and the Saldivar Affidavit on the public docket within 14 days of this Order. These documents provide the basis for the court's decision, and so the public has a right to view them. *See United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (recognizing common-law right of access to judicial records and strong presumption in favor of public access "where the district court used the sealed documents to determine litigants' substantive legal rights" (quotation

cleaned up)). Given that these documents involve minor children, the parties should redact the minors' names, filing these documents provisionally under seal and following the court's sealing rule to redact those names. *See* D. Kan. Rule 5.4.2; Fed. R. Civ. P. 5.2(a)(3).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff E.D.H.'s Motion for Approval of a Minor Settlement Agreement (Doc. 59) and Supplemental Motion for Approval of a Minor Settlement Agreement (Doc. 77) are **GRANTED**. The court approves the minors' settlement and apportions the settlement proceeds in the fashion described by this Memorandum and Order.

**IT IS FURTHER ORDERED THAT** the parties should file the Settlement Agreement, the Hernandez Affidavit, and the Saldivar Affidavit with 14 days of this Order with the minors' names redacted.

**IT IS SO ORDERED.**

**Dated this 6th day of October, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**